1

2
CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
3
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
4
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
5
(858) 375-7385; (888) 422-5191 fax
6
amandas@potterhandy.com

7
Attorneys for Plaintiff

8

9
UNITED STATES DISTRICT COURT

NORTHEN DISTRICT OF CALIFORNIA
10

11

12
**Oziel, Sawyer III,**                    **Case No**.

            Plaintiff,
13

14
    **v.**                                **Complaint for Damages and**
                                           **Injunctive Relief for Violations**
**Elmo Investments, L.L.C.,** a            **of:** Americans with Disabilities
15
California Limited Liability               Act; Unruh Civil Rights Act
Company;
16
            Defendant,
17

18

19

20
Plaintiff Oziel, Sawyer III complains of Elmo Investments, L.L.C., a California
21
Limited Liability Company; ("Defendant"), and alleges as follows:

22

23
    **PARTIES:**

24
    1. Plaintiff is a California resident with physical disabilities. He is

25
substantially limited in his ability to walk. He suffers from a spine injury. He

26
uses a wheelchair for mobility.

27
    2. Defendant Elmo Investments, L.L.C., a California Limited Liability

28
Company; owns and operates The Inn at Mavericks located at 346 Princeton

Complaint

1  Ave, Half Moon Bay, California currently and at all times relevant to this
2  complaint.

3  3.  Plaintiff does not know the true names of Defendants, their business
4  capacities, their ownership connection to the property and business, or their
5  relative responsibilities in causing the access violations herein complained of,
6  and alleges a joint venture and common enterprise by all such Defendants.
7  Plaintiff is informed and believes that each of the Defendants herein, is
8  responsible in some capacity for the events herein alleged, or is a necessary
9  party for obtaining appropriate relief. Plaintiff will seek leave to amend when
10 the true names, capacities, connections, and responsibilities of other
11 Defendants are ascertained.

12

13 **JURISDICTION:**

14 4.  The Court has subject matter jurisdiction over the action pursuant to 28
15 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with
16 Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

17 5.  Pursuant to supplemental jurisdiction, an attendant and related cause
18 of action, arising from the same nucleus of operative facts and arising out of
19 the same transactions, is also brought under California's Unruh Civil Rights
20 Act, which act expressly incorporates the Americans with Disabilities Act.

21 6.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is
22 founded on the fact that the real property which is the subject of this action is
23 located in this district and that Plaintiff's cause of action arose in this district.

24

25 **PRELIMINARY STATEMENT**

26 7.  This is a lawsuit challenging the reservation policies and practices of a
27 place of lodging. Plaintiff does not know if any physical or architectural
28 barriers exist at the hotel and, therefore, is not claiming that that the hotel has

2

Complaint

1   violated any construction-related accessibility standard. Instead, this is about

2   the lack of information provided on the hotel's reservation website that would

3   permit plaintiff to determine if there are rooms that would work for him.

4       8.   After decades of research and findings, Congress found that there was

5   a "serious and pervasive social problem" in America: the "discriminatory

6   effects" of communication barriers to persons with disability. The data was

7   clear and embarrassing. Persons with disabilities were unable to "fully

8   participate in all aspects of society," occupying "an inferior status in our

9   society," often for no other reason than businesses, including hotels and

10  motels, failed to provide information to disabled travelers. Thus, Congress

11  decided "to invoke the sweep of congressional authority" and issue a "national

12  mandate for the elimination of discrimination against individuals with

13  disabilities," and to finally ensure that persons with disabilities have "equality

14  of opportunity, full participation, independent living" and self-sufficiency.

15      9.   As part of that effort, Congress passed detailed and comprehensive

16  regulations about the design of hotels and motels. But, as importantly,

17  Congress recognized that the physical accessibility of a hotel or motel means

18  little if the 61 million adults living in America with disabilities are unable to

19  determine which hotels/motels are accessible and to reserve them. Thus,

20  there is a legal mandate to provide a certain level of information to disabled

21  travelers.

22      10.  But despite the rules and regulations regarding reservation procedures,

23  a 2019 industry article noted that: "the hospitality sector has largely

24  overlooked the importance of promoting accessible features to travelers."

25      11. These issues are of paramount important. Persons with severe

26  disabilities have modified their own residences to accommodate their unique

27  needs and to ameliorate their physical limitations. But persons with disabilities

28  are never more vulnerable than when leaving their own residences and having

Complaint

1   to travel and stay at unknown places of lodging. They must be able to ascertain

2   whether those places work for them.

3

4   **FACTUAL ALLEGATIONS:**

5   12. Plaintiff planned on making a trip in August of 2021 to Half Moon Bay,

6   California, area.

7   13. He chose The Inn at Mavericks located at 346 Princeton Ave, Half Moon

8   Bay, California because this hotel was at a desirable price and location.

9   14. Due to Plaintiff's condition, he is unable to, or seriously challenged in

10   his ability to, stand, ambulate, reach objects, transfer from his chair to other

11   equipment, and maneuver around fixed objects.

12   15. Thus, Plaintiff needs an accessible guestroom and he needs to be given

13   information about accessible features in hotel rooms so that he can confidently

14   book those rooms and travel independently and safely.

15   16. Plaintiff went to The Inn at Mavericks reservation website at

16   https://www.innatmavericks.com/ seeking to book an accessible room at the

17   location on February 3, 2021.

18   17. This website reservation system is owned and operated by the

19   Defendants and permits guests to book rooms at The Inn at Mavericks.

20   18. Plaintiff found that there was insufficient information about the

21   accessible features in the "accessible rooms" at the Hotel to permit him to

22   assess independently whether a given hotel room would work for him.

23   19. Here, under the hotel reservation website fails to describe or provide

24   details about the accessibility features in the guestrooms or any details such as

25   accessible bathtub, shower, toilet, grab bars, lavatory sink.

26   20. With respect to the shower, the Hotel reservation website does not

27   provide any information on existence of accessible roll-in shower/accessible

28   bathtub/shower seat. The plaintiff mightily struggles while transferring from

Complaint

1   wheelchair to shower/ bathtub.  The grab bars in the shower/ bathtub are an

2   essential requirement as it helps him in assistance and transfer accordingly.

3   The hotel reservation website fails to identify or describe if there are any /grab

4   bars/detachable shower wand. Under the "Jetty Suite" ADA room available,

5   the hotel reservation website simply states, "Luxury Bathroom with a Walk-In

6   Oversized Shower." The information provided is insufficient and lacks

7   description. The Plaintiff needs detailed information regarding the

8   accessibility of the bathroom. Thus, making it more difficult for the Plaintiff to

9   individually assess the room prior booking. Stating if a particular room is a roll-

10  in shower or tub is a threshold issue for most persons with mobility disabilities

11  like Plaintiff.

12      21. As for the toilet, there are no details about the height of the toilet and

13  the grab bars. Plaintiff cannot transfer from his wheelchair to a toilet unless

14  there are grab bars at the toilet to facilitate that transfer.  The plaintiff struggles

15  mightily with toilets which are either too tall or too low, as he has to transfer

16  from his wheelchair to the toilet. He needs to know the height of the toilet. But

17  the Hotel reservation website does not provide any information about the

18  existence of grab bars for the accessible guestroom toilets.

19      22. As for the lavatory sink, Plaintiff has had tremendous difficulty with

20  using lavatory sinks in the past because sinks were cabinet style sinks or had

21  low hanging aprons that did not provide knee clearance for a wheelchair user

22  to pull up and under or, alternatively, where the plumbing underneath the sink

23  was not wrapped with insulation to protect against burning contact to his

24  knees. Here, the Hotel reservation website provides no information about the

25  accessibility of the sinks in the accessible guestroom.

26      23. As for the accessibility of the Hotel, the reservation website fails to

27  provide details on the accessible areas in the Hotel such as lobby, registration

28  desk, swimming pool, entrance, parking, etc. This is an essential information

Complaint

1     to the Plaintiff.

2        24. . Plaintiff is unable to assess if the rooms simply do not comply at all,

3     itself a violation, or fail to disclose those features, also a violation.

4        25. Plaintiff does not need an exhaustive list of accessibility features.

5     Plaintiff does not need an accessibility survey to determine of a room works for

6     him. Plaintiff, like the vast majority of wheelchair users, simply needs a

7     handful of features to be identified and described with a modest level of detail:

8        • For the doors, Plaintiff simply needs to know if he can get into the hotel

9           room and into the bathroom. This is a problem that has created

10          tremendous problems for the Plaintiff in the past. A simple statement

11          that the hotel room entrance and interior doors provide at least 32

12          inches of clearance is enough to provide Plaintiff this critical piece of

13          information about whether he can fit his wheelchair into the hotel

14          rooms.

15       • For the beds themselves, the only thing Plaintiff needs to know (and the

16          only thing regulated by the ADA Standards) is whether he can actually

17          get to (and into) the bed, i.e., that there is at least 30 inches width on the

18          side of the bed so his wheelchair can get up next to the bed for transfer.

19          This is critical information because Plaintiff cannot walk and needs to

20          pull his wheelchair alongside the bed.

21       • For the desk where Plaintiff will eat and work, Plaintiff simply needs to

22          know that it has sufficient knee and toe clearance so that he can use it.

23          A simple statement like "the desk provides knee and toe clearance that

24          is at least 27 inches high, 30 inches wide, and runs at least 17 inches

25          deep" is more than sufficient. Because Plaintiff is confined to a

26          wheelchair, he needs to know this information to determine if the desk

27          is accessible to and useable by him.

28       • For the restroom toilet, Plaintiff only needs to know two things that

Complaint

determine if he can transfer to and use the toilet; (1) that the toilet seat height is between 17-19 inches (as required by the ADA Standards) and (2) that it has the two required grab bars to facilitate transfer.

- For the restroom sink, the Plaintiff two things that will determine whether he can use the sink from his wheelchair: (1) can he safely get his knees under the toilet? To wit: does the sink provide the knee clearance (27 inches high, 30 inches wide, 17 inches deep) and is any plumbing under the sink wrapped with insulation to protect against burning contact?  The second thing is whether the lavatory mirror is mounted at a lowered height so that wheelchair users can sue it. A simple statement like: "the lavatory sink provides knee clearance of at least 30 inches wide, 27 inches tall and 17 inches deep, all of the under-sink plumbing is wrapped, and the lowest reflective edge of the mirror is no more than 40 inches high" would suffice.

- Finally, for the shower, Plaintiff needs to know only a handful of things: (1) what type of shower it is (transfer, standard roll-in, or alternate roll-in), (2) whether it has an in-shower seat; (3) that there are grab bars mounted on the walls; (4) that there is a detachable hand-held shower wand for washing himself and (5) that the wall mounted accessories and equipment are all within 48 inches height.

26. This small list of items are the bare necessities that Plaintiff must know to make an independent assessment of whether the "accessible" hotel room works for him. These things comprise the basics of what information is reasonably necessary for Plaintiff (or any wheelchair user) to assess independently whether a given hotel or guest room meets his or her accessibility needs.

27. Other accessibility requirements such as slopes of surfaces, whether the hand-held shower wand has a non-positive shut off valve, the temperature

Complaint

1    regulator, the tensile strength and rotational design of grab bars, and so many

2    more minute and technical requirements under the ADA are beyond what is a

3    reasonable level of detail and Plaintiff does not expect or demand that such

4    information is provided.

5        28. But because the Defendants have failed to identify and describe the core

6    accessibility features in enough detail to reasonably permit individuals with

7    disabilities to assess independently whether a given hotel or guest room meets

8    his accessibility needs, the Defendants fail to comply with its ADA obligations

9    and the result is that the Plaintiff is unable to engage in an online booking of

10   the hotel room with any confidence or knowledge about whether the room will

11   actually work for him due to his disability.

12       29. This lack of information created difficulty for the Plaintiff and the idea

13   of trying to book this room -- essentially ignorant about its accessibility --

14   caused difficulty and discomfort for the Plaintiff and deterred him from

15   booking a room at the Hotel

16       30. Plaintiff travels frequently and extensively, not only for non-litigation

17   reasons but also because he is an ADA tester and actively engaged in finding

18   law breaking businesses and hauling them before the courts to be penalized

19   and forced to comply with the law.

20       31. As he has in the past, Plaintiff will continue to travel to the Half Moon

21   Bay area on a regular and ongoing basis and will patronize this Hotel once it

22   has been represented to him that the Defendant has changed its policies to

23   comply with the law and to determine if the Hotel is physically accessible as

24   well as complying with required reservation procedures. Plaintiff will,

25   therefore, be discriminated against again, i.e., be denied his lawfully entitled

26   access, unless and until the Defendant is forced to comply with the law.

27       32. Plaintiff has reason and motivation to use the Defendant's Hotel

28   reservation system and to stay at the Defendant's Hotel in the future. Among

Complaint

1  his reasons and motivations are to assess these policies and facilities for

2  compliance with the ADA and to see his lawsuit through to successful

3  conclusion that will redound to the benefit of himself and all other similarly

4  situated. Thus, Plaintiff routinely revisits and uses the facilities and

5  accommodations of places he has sued to confirm compliance and to enjoy

6  standing to effectuate the relief promised by the ADA.

7

8  **I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS**

9  **WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all

10  Defendants.) (42 U.S.C. section 12101, et seq.)

11      33. Plaintiff re-pleads and incorporates by reference, as if fully set forth

12  again herein, the allegations contained in all prior paragraphs of this

13  complaint.

14      34. Under the ADA, it is an act of discrimination to fail to make reasonable

15  modifications in policies, practices, or procedures when such modifications

16  are necessary to afford goods, services, facilities, privileges advantages or

17  accommodations to person with disabilities unless the entity can demonstrate

18  that taking such steps would fundamentally alter the nature of those goods,

19  services, facilities, privileges advantages or accommodations. See 42 U.S.C. §

20  12182(B)(2)(A)(ii).

21      35. Specifically, with respect to reservations by places of lodging, a

22  defendant must ensure that its reservation system, including reservations

23  made by "any means," including by third parties, shall:

24              a. Ensure that individuals with disabilities can make

25                  reservations for accessible guest rooms during the same

26                  hours and in the same manner as individuals who do not

27                  need accessible rooms;

28              b. Identify and describe accessible features in the hotels and

Complaint

1   guest rooms offered through its reservations service in
2   enough detail to reasonably permit individuals with
3   disabilities to assess independently whether a given hotel
4   or guest room meets his or her accessibility needs; and

5       c. Reserve, upon request, accessible guest rooms or specific
6   types of guest rooms and ensure that the guest rooms
7   requested are blocked and removed from all reservations
8   systems.

9   *See* 28 C.F.R. § 36.302(e).

10   36. Here, the defendant failed to modify its reservation policies and
11   procedures to ensure that it identified and described accessible features in the
12   hotels and guest rooms in enough detail to reasonably permit individuals with
13   disabilities to assess independently whether a given hotel or guest room meets
14   his or her accessibility needs and failed to ensure that individuals with
15   disabilities can make reservations for accessible guest rooms during the same
16   hours and in the same manner as individuals who do not need accessible
17   rooms.

18   **II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL**
19   **RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ.
20   Code § 51-53.)

21   37. Plaintiff repleads and incorporates by reference, as if fully set forth
22   again herein, the allegations contained in all prior paragraphs of this
23   complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia,
24   that persons with disabilities are entitled to full and equal accommodations,
25   advantages, facilities, privileges, or services in all business establishment of
26   every kind whatsoever within the jurisdiction of the State of California. Cal.
27   Civ. Code §51(b).

28   38. The Unruh Act provides that a violation of the ADA is a violation of the

Complaint

1 | Unruh Act.  Cal. Civ. Code, § 51(f).

2 | 39. Defendants' acts and omissions, as herein alleged, have violated the

3 | Unruh Act by, inter alia, failing to comply with the ADA with respect to its

4 | reservation policies and practices.

5 | 40. Because the violation of the Unruh Civil Rights Act resulted in difficulty

6 | and discomfort for the plaintiff, the defendants are also each responsible for

7 | statutory damages, i.e., a civil penalty. *See* Civ. Code § 52(a).

8 | **PRAYER**:

9 | Wherefore, Plaintiff prays that this Court award damages and provide

10 | relief as follows:

11 | 1. For injunctive relief, compelling Defendants to comply with the

12 | Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the

13 | plaintiff is not invoking section 55 of the California Civil Code and is not

14 | seeking injunctive relief under the Disabled Persons Act at all.

15 | 2. Damages under the Unruh Civil Rights Act, which provides for actual

16 | damages and a statutory minimum of $4,000 for each offense.

17 | 3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant

18 | to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

19 | 4. "For equitable nominal damages for violation of civil rights. See

20 | *Uzuegbunam v. Preczewski,* 141 S.Ct. 792 (2021) and any other equitable relief

21 | the Court finds appropriate."

23 | Dated: July 6, 2021              CENTER FOR DISABILTY ACCESS

27 | By:_____

28 | Russell Handy, Esq.
Attorneys for Plaintiff

11

Complaint